NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220783-U

NOS. 4-22-0783, 4-22-0784, 4-22-0785 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 18, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Mar'q. C., Mar'k. C., and M.W., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Peoria County |
| Petitioner-Appellee, | ) | Nos. 19JA324 |
| v. | ) | 19JA325 |
| Tasheanna C., | ) | 20JA51 |
| Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | Derek G. Asbury, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment terminating respondent's parental rights as no meritorious issues could be raised on appeal.

¶ 2    On August 19, 2022, the trial court entered an order terminating the parental rights of respondent, Tasheanna C., to her children, Mar'k. C. (born February 27, 2017), Mar'q. C. (born June 7, 2018), and M.W. (born January 29, 2020). Respondent appealed. Appellate counsel now moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), on the basis that he cannot raise any potentially meritorious argument on appeal. Counsel's notice of filing and proof of service indicate he sent a copy of his motion and brief to respondent by mail. We granted respondent until November 7, 2022, to file a response. No response was filed. After reviewing the

record and counsel's brief, we grant counsel's motion to withdraw and affirm the judgment of the trial court.

¶ 3                                   I. BACKGROUND

¶ 4            On September 19, 2019, the State filed a petition for adjudication of wardship regarding Mar'k. C. and Mar'q. C. The petition alleged both minors were neglected by their parents, respondent and Mykell W., who is not a party to this appeal, in that they were in an environment injurious to their health and well-being. The younger sibling, Mar'q. C., who was 15 months old at the time of the petition, was designated as a failure-to-thrive minor based on medical neglect and Mar'k. C., who was two and a half years old, was at risk due to the parents' neglect of Mar'q. C. The Illinois Department of Children and Family Services (DCFS) removed the minors from the parents' custody and placed them together in substitute care.

¶ 5            On December 12, 2019, respondent stipulated to the allegations in the petition and the trial court entered an adjudicatory order finding the minors neglected on the grounds alleged.

¶ 6            On January 29, 2020, respondent gave birth to M.W., who was taken into protective custody based upon the status of the cases involving her brothers. The State filed a petition for adjudication of wardship, alleging M.W. was neglected. On August 6, 2020, respondent stipulated to those allegations as well and the trial court entered an adjudicatory order finding M.W. neglected on the grounds alleged.

¶ 7            Also on August 6, 2020, the trial court entered a dispositional order related to all three minors, finding respondent unfit to parent them and making them wards of the court.

¶ 8            On January 11, 2022, the State filed a petition to terminate respondent's parental rights. The petition alleged respondent had failed to make reasonable progress toward the minors' return during the nine-month period from April 10, 2021, through January 10, 2022. See 750 ILCS

50/1(D)(m)(ii) (West 2020).

¶ 9        On August 5, 2022, the trial court held a termination hearing. First, the State asked the court to take judicial notice of each of the juvenile cases. Without objection, the court agreed but noted it intended to "only consider the orders, not consider the permanency review orders, any progress or efforts findings, only services that were ongoing for benchmark purposes. The Court will also disregard any court reports that contain hearsay."

¶ 10        Ashley Woods testified she was the caseworker at Children's Home Association of Illinois (Children's Home) from March 2021 to October 1, 2021. Upon the State's prompting, Woods agreed to answer questions only pertaining to the time frame of April 10, 2021, until the day she left the case. Pursuant to the service plan, respondent was required to complete tasks relating to the following categories: (1) attend Mar'q. C.'s doctor visits, (2) maintain a legal source of income, (3) obtain suitable housing, (4) attend visitation, (5) complete a drug and alcohol assessment, (6) participate in individual counseling, and (7) submit drug drops at the agency's discretion.

¶ 11        Woods testified respondent attended 4 of 14 scheduled visits and declined adding visits to make up those missed. She had completed a drug and alcohol assessment, resulting in no treatment recommendation, but, at the agency's discretion, she was asked to submit drug drops twice a month. She completed four of those drops, once testing positive for amphetamines and methamphetamine in April 2021 but failing to appear at "[m]ost of them." She did successfully complete a parenting course and individual counseling.

¶ 12        Respondent did not attend Mar'q. C.'s doctor visits, did not report any suitable living arrangements, and did not have suitable verifiable income or employment during Woods's tenure.

¶ 13    Heather Scott, Woods's successor at Children's Home, testified she became the caseworker on October 1, 2021, and remained such until the end of the nine-month period on January 10, 2022. During her tenure, respondent visited with the minors twice and submitted no drug drops. There were no scheduled doctor appointments. Respondent did have two verifiable jobs, but Scott was unsure of the dates of her employment. Scott testified that, on October 29, 2021, when both parents appeared for a visit, Scott canceled because she feared the parents were under the influence, as their vehicle had a strong odor of marijuana.

¶ 14    In terms of visitation, Scott testified respondent had difficulty engaging with the minors. She would provide a meal but would then struggle with interaction for two hours. The minors would approach Scott to play and Scott would redirect them to respondent.

¶ 15    For housing, Scott testified respondent was living in a house previously deemed unsuitable. Scott advised respondent to contact her once she moved into a different home, but Scott was never informed of a move or that the current residence was ready for a reinspection. The State rested.

¶ 16    Respondent's counsel asked the trial court to take judicial notice of Peoria County case No. 12-JA-278, a juvenile case with respondent as the ward. Without objection, the court agreed to take notice "with the same caveat as to what the court will consider within there."

¶ 17    Respondent testified she was living in an apartment when the minors were taken into care. This was an apartment secured through DCFS as part of an independent living program. She moved in with her grandmother on August 31, 2020, and remained there through the nine-month period. She said she was unable to secure housing because the minors' medical bills were damaging her credit. Respondent testified that in counseling she learned coping skills and how to better interact with her children. She admitted she had missed the visits the caseworkers

- 4 -

had mentioned, but some of the missed visits were due to her work schedule. She said she thought she had provided proof of employment, "but [she] may not have."

¶ 18    The trial court recalled Woods for an explanation regarding the visitation protocol. According to Woods, respondent was required to appear at the agency before the minors were picked up. This was due to respondent's "history of not showing up to visits." The agency did not want the minors to be disappointed if respondent failed to appear. The court noted respondent attended 6 out of 19 visits during the nine-month time frame. The court took the matter under advisement.

¶ 19    On August 19, 2022, the trial court found the State had proven by clear and convincing evidence respondent was unfit for failing to make reasonable progress toward the return of the minors during the nine-month period in question.

¶ 20    The matter proceeded immediately to a determination of the best interest of the minors. Mindy Weber, the current caseworker, testified M.W. had been living with her foster parents and their two or three biological children since shortly after her birth. Mar'q. C. and Mar'k. C. have resided in a different foster home together since 2019 with their foster parents and two older adopted children. Based on Weber's observations, each minor appeared to be very comfortable in his or her foster home. All of their physical, medical, and emotional needs were being met. Each minor seemed very attached and bonded to their foster parents and each looked to their foster parents for safety and security. Mar'q. C. was no longer a failure-to-thrive minor. The foster parents are friends and arrange for sibling visitation throughout every month. Both sets of foster parents were willing to adopt the minors, and DCFS recommended they be adopted.

¶ 21    The trial court found the State had shown by a preponderance of the evidence it would be in the minors' best interest to terminate respondent's parental rights and change the

permanency goal to adoption. The court noted, "virtually every [statutory] factor favors termination of parental rights because that is what is in the best interest of the minors based on what has been the last two or three years."

¶ 22        This appeal followed.

¶ 23                              II. ANALYSIS

¶ 24        On appeal, appellate counsel seeks to withdraw on the basis he cannot raise any arguments of potential merit.

¶ 25        The procedure for appellate counsel to withdraw set forth in *Anders* applies to findings of parental unfitness and termination of parental rights. *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). Under this procedure, counsel's request to withdraw must " 'be accompanied by a brief referring to anything in the record that might arguably support the appeal.' " *Id.* (quoting *Anders*, 386 U.S. at 744). Counsel must "(a) sketch the argument in support of the issues that could conceivably be raised on appeal, and then (b) explain why he believes the arguments are frivolous." *Id.* Counsel must then conclude the case presents no viable grounds for appeal. *Id.* In doing so, counsel should review both the unfitness finding and the best interest determination and indicate in the brief that he or she has done so. *Id.* at 685-86.

¶ 26        In this case, counsel asserts he has reviewed the record on appeal, including the report of proceedings of the termination hearing, and has concluded there are "no viable grounds for appeal." Counsel asserts he has considered raising the arguments (1) the trial court's finding of unfitness was against the manifest weight of the evidence and (2) the court's finding it was in the best interest of the minors to terminate respondent's parental rights was not supported by the applicable statutory factors. We address each argument in turn and ultimately agree with counsel's conclusion there are no issues of arguable merit to be raised on review. (We note counsel also

raised a potential issue regarding the lack of a referral for a psychological evaluation, which appeared to be, at one point, a recommended service. However, later in the record, it was clear the service was recommended for the father, not for respondent.)

¶ 27                                    A. Finding of Parental Unfitness

¶ 28            Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)), a parent may be found unfit if she fails "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor." "A trial court's determination that a parent's unfitness has been established by clear and convincing evidence will not be disturbed on review unless it is contrary to the manifest weight of the evidence." *Gwynne P.*, 215 Ill. 2d at 354.

¶ 29            Here, the State alleged respondent was unfit for failing to make reasonable progress toward the return of the minors during the nine-month period from April 10, 2021, through January 10, 2022. See 750 ILCS 50/1(D)(m)(ii) (West 2020). The trial court found the State had established the sole ground of unfitness by clear and convincing evidence. The court stated it "heard no testimony in this case that the minors were remotely close to return home at any time during this nine-month period." The court further noted respondent attended only approximately one-third of her scheduled visits, failed to verify her employment, missed the majority of her drug drops while testing positive on one, and failed to improve her housing situation. Given the evidence presented, the court found respondent "arguably may have been farther away [from a goal of return home] because of the substance issues and the drops."

¶ 30      Based on our review of the record, we find the trial court's finding of unfitness was not against the manifest weight of the evidence. Further, we agree with appellant counsel's assessment of this issue as one not worthy of appeal.

¶ 31                        B. Best Interest Determination

¶ 32      Appellate counsel also indicates he has considered arguing the trial court's best interest finding was against the manifest weight of the evidence when there was insufficient evidence supporting M.W.'s placement separate and apart from her brothers and without consideration of relative placement for all three minors.

¶ 33      When a trial court finds a parent to be unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). In making the best interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-3(4.05) (West 2020)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19.

¶ 34 At a best interest hearing, the State must prove by a preponderance of the evidence that termination of parental rights is in the best interest of the minor. *D.T.*, 212 Ill. 2d at 366. On review, "[w]e will not disturb a court's finding that termination is in the children's best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 35 In the instant case, while the trial court did not expressly reference section 1-3(4.05) of the Act, it explicitly considered the statutory factors set forth in that section. Specifically, the court considered M.W. had lived with her foster parents since shortly after she was born and had bonded with her foster family. Also, the boys had been placed in the same foster home together since case opening. The court noted both foster homes were safe and appropriate and the minors' needs were being met. The court found the best opportunity for permanency was through DCFS's adoption plan for the minors' respective foster placements. The court also noted the foster families' cognizance and efforts of maintaining the siblings' relationships with each other by providing frequent sibling visitation. The evidence demonstrated each minor was thriving in his and her respective placement. Given this evidence, we conclude the court's best interest finding was based on an appropriate consideration of the statutory factors and was not against the manifest weight of the evidence.

¶ 36                                III. CONCLUSION

¶ 37 For the reasons stated, we allow appellate counsel to withdraw and affirm the trial court's judgment.

¶ 38        Affirmed.